**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

IN RE APPLICATION OF ILAN SHOR
FOR AN ORDER DIRECTING
DISCOVERY FROM MATEI DOHOTARU
PURSUANT TO 28 U.S.C. § 1782

</td><td>

Case No. _____

Case: 1:23–mc–00072
Assigned To : McFadden, Trevor N.
Assign. Date : 7/26/2023
Description: Misc.

</td></tr>
</table>

**ILAN SHOR'S MOTION TO ENFORCE SUBPOENA, HOLD NON-PARTY IN**
**CONTEMPT, AND AWARD ATTORNEY'S FEES FOR FAILURE TO COMPLY WITH**
**<u>RULE 45 SUBPOENA</u>**

In 2017, Ilan Shor was tried and convicted of various offenses connected to the disappearance of $1 billion from three Moldovan banks in 2014. In connection with his appeal of those offenses in Moldova, Mr. Shor now seeks deposition testimony and documents from Mr. Dohotaru in the United States to present to the Moldovan courts, and, should it become necessary, the European Court of Human Rights.[1] On June 22, 2023, the Honorable Judge Anthony Trenga in the Eastern District of Virginia, where Mr. Dohotaru currently resides, granted Mr. Shor's application for discovery pursuant to 28 U.S.C. § 1782, and issued subpoenas requiring Mr. Dohotaru to provide that testimony and documents at undersigned counsel's office in Washington, D.C. EDVA Case, ECF No. 11. Mr. Dohotaru was served with both subpoenas on June 26, 2023. EDVA Case, ECF Nos. 14, 15.

---

[1] The background surrounding Mr. Shor's case is described in further detail in his Motion for Discovery ("Motion") and accompanying exhibits and memorandum of law submitted in the Eastern District of Virginia. *In re Application of Ilan Shor for an Order Directing Discovery from Matei Dohotaru Pursuant to 28 U.S.C. § 1782*, No. 23-mc-12 (June 16, 2023) (hereinafter "EDVA Case"), ECF Nos. 1, 1-5, 1-6, 1-7, 1-8, 1-9, 6. Those materials are attached herein as Exhibit 1 to this filing.

The subpoena for documents ("Document Subpoena") required Mr. Dohotaru to respond on or before July 14, 2023. EDVA Case, ECF No. 12. Mr. Dohotaru has not responded to the Document Subpoena.

The subpoena for Mr. Dohotaru's deposition ("Deposition Subpoena") lists a compliance deadline of August 11, 2023, which has not yet passed. EDVA Case, ECF No. 12. But Mr. Shor needs the documents sought in the Document Subpoena well before August 11, 2023, to be able to prepare fully for Mr. Dohotaru's deposition.

Accordingly, Mr. Shor seeks an order from this Court that Mr. Dohotaru comply with the Document Subpoena on or before August 8, 2023.[2] Mr. Shor further requests the Court hold Mr. Dohotaru in contempt for his refusal to comply (or in any way respond) and order him to pay the costs associated with filing this motion.

## MEMORANDUM IN SUPPORT

### I.   BACKGROUND

#### A.   About Ilan Shor

Mr. Shor is a prominent businessman and politician in Moldova. He is the leader of the Șor Party, a minority, opposition political party in Moldova. *See* Declaration of Aureliu Colenco ("Colenco Decl.") ¶ 4 (Exhibit 1 at 47). In 2014, Mr. Shor accepted an appointment as Chairman of the Board of one of Moldova's largest banks, Banca de Economii. Colenco Decl. ¶ 4 (Exhibit 1 at 47). In March 2019, Mr. Shor became a member of the Parliament of the Republic of Moldova, a position he held until April 27, 2023, when the current parliamentary majority voted

---

[2] Accordingly, Mr. Shor further requests that any opposition to this Motion be filed on or before August 2, 2023, and any reply thereto be due on or before August 4, 2023.

to strip him of his mandate, namely in connection with his criminal convictions that are the subject of his appeal in Moldova. Colenco Decl. ¶ 4 (Exhibit 1 at 47).

Several months after Mr. Shor's appointment to serve as the Chairman of Banca de Economii, the National Bank of Moldova ("NBM"), which exercises regulatory authority over Moldova's banking system, placed Banca de Economii and two other major Moldovan banks—Unibank, S.A. and Banca Sociala, S.A. (collectively, the "Moldovan Banks")—under temporary administration due to insufficient liquidity. Declaration of Shaul Brazil ("Brazil Decl.") ¶ 5 (Exhibit 1 at 4). In 2016, the Moldovan Anti-Corruption Prosecutor's Office charged Mr. Shor with criminal fraud and money laundering in connection with the collapse of the Moldovan Banks. *See* Colenco Decl. ¶ 5 (Exhibit 1 at 47).

**B.      Mr. Shor's Trial in the First Instance and Mr. Dohotaru's Trial Testimony**

In June 2017, following a trial, the Moldovan court of first instance acquitted Mr. Shor of fraud but found him guilty of the lesser offense of causing material damage through deception or abuse of trust, as well as money laundering. *See* Colenco Decl. ¶ 5 (Exhibit 1 at 47); *see also* Judgment dated June 21, 2017 of the Chisinau Court, Buiucani Division against Mr. Ilan Shor at 42 (excerpts, along with certified translations, are attached as Exhibit A to Brazil Decl.) (Exhibit 1 at 17-29).

Matei Dohotaru—who once held a high-ranking supervisory position at NBM—was the Moldovan government's star witness at the trial before the court of first instance. Colenco Decl. ¶ 5 (Exhibit 1 at 47). Mr. Dohotaru testified at the first trial, *inter alia*, that companies connected to Mr. Shor were involved in fictitious banking transactions to conceal bank fraud. Colenco Decl. ¶ 7 (Exhibit 1 at 47). Evidence has since come to light that casts serious doubt on that testimony—evidence that Mr. Shor was unable to use to cross-examine Mr. Dohotaru on. That new evidence includes: (1) indications that Mr. Dohotaru, in testifying against Mr. Shor at trial,

3

was almost certainly a cooperating witness motivated to save himself from prosecution; and
(2) bank records that directly contradict portions of Mr. Dohotaru's testimony. Brazil Decl. ¶ 30
(Exhibit 1 at 10).[3] Nevertheless, the court of first instance relied heavily on Mr. Dohotaru's
testimony in convicting Mr. Shor of certain of the counts against him. *See* Colenco Decl. ¶ 6
(Exhibit 1 at 47).

### C.    Mr. Shor's Appeal and Mr. Dohotaru's Post-Trial Departure from Moldova

On July 31, 2017, Mr. Shor appealed his convictions. Colenco Decl. ¶ 7 (Exhibit 1 at 47).
Mr. Shor's appellate counsel raised numerous grounds on appeal, chief among them challenges
to Mr. Dohotaru's testimony, including the evidentiary issues referenced above. Colenco Decl.
¶¶ 13-14 (Exhibit 1 at 49); Brazil Decl. ¶¶ 29-30 (Exhibit 1 at 9-10). As explained by
Mr. Colenco—Mr. Shor's lead criminal defense counsel in the Moldovan appellate
proceedings—in support of Mr. Shor's Section 1782 petition, appeals in Moldovan criminal
cases entail full evidentiary proceedings, meaning the Court of Appeal reconsiders the entire
evidentiary record *de novo*, as well as any new exculpatory evidence presented by the defense.
Indeed, under Moldovan law, a criminal defendant can present new exculpatory evidence at any
time—even after the proceedings have concluded. Colenco Decl. ¶ 7 (Exhibit 1 at 47).
Accordingly, Mr. Shor's appellate counsel sought to compel Mr. Dohotaru to testify and produce

---

[3] Moreover, Mr. Dohotaru's testimony appears to have been based largely—perhaps entirely—
on a single report that was prepared by the Kroll investigative firm ("the Kroll report") at NBM's
request. The Kroll report was never admitted into evidence at trial, and for good reason—its own
preparers admitted that it had had to rely solely on information that NBM provided and which it
had not been able to independently verify. Brazil Decl. ¶ 25 (Exhibit 1 at 8-9). And it's been
reported that Mr. Dohotaru himself was the source for many of the assertions in that report.
Brazil Decl. ¶ 27 (Exhibit 1 at 9). In other words, Mr. Dohotaru's testimony was either based on
hearsay from a third-party report that wasn't part of the trial record and which its own preparers
admitted was based on information they hadn't been able to verify independently, or the court of
first instance heard Mr. Dohotaru's own biased assertions cloaked in the guise of a neutral third-
party investigator's report.

documents in his possession for use in Mr. Shor's defense on appeal. Colenco Decl. ¶ 8 (Exhibit 1 at 48). The prosecution, too, "requested Mr. Dohotaru as witness # 1 on their witness list, which the Court approved." Colenco Decl. ¶ 9 (Exhibit 1 at 48).

However, the prosecution later advised the Court of Appeal that Mr. Dohotaru was unavailable to be examined, because he now resides in the United States, and could not be compelled to travel to Moldova to give testimony. Colenco Decl. ¶¶ 12-13 (Exhibit 1 at 48-49); Brazil Decl. ¶¶ 9, 28 (Exhibit 1 at 5, 9). As a result, the Chisinau Court of Appeal ordered the summary of Mr. Dohotaru's testimony from the first trial to be read into the record of its evidentiary proceedings, thereby depriving Mr. Shor's defense counsel of the ability to question Mr. Dohotaru on cross-examination—which he had a right to do under Moldovan law, particularly in light of the additional evidence that had surfaced. Colenco Decl. ¶ 12 (Exhibit 1 at 48-49); Brazil Decl. ¶ 28 (Exhibit 1 at 9).

On April 13, 2023—within hours after the end of two full days of closing arguments— the Chisinau Court of Appeal announced that not only did it affirm Mr. Shor's convictions, it (1) convicted him of the additional fraud charge that the court of first instance had acquitted him of, and (2) sentenced him to fifteen (15) years in prison. Colenco Decl. ¶ 17 (Exhibit 1 at 50); Brazil Decl. ¶ 15 (Exhibit 1 at 6). The Court issued a 200-page opinion in support of this decision on May 30, 2023, in which the Court of Appeal "continued to rely on Mr. Dohotaru's testimony from the first instance trial as the primary evidence against Mr. Shor." Colenco Decl. ¶ 18 (Exhibit 1 at 50); see also Brazil Decl. ¶ 15 (Exhibit 1 at 6).

### D.   Ongoing Proceedings in Moldova

The criminal case in Moldova is far from over, and as Mr. Shor's criminal counsel in Moldova has attested, "the taking of Mr. Dohotaru's testimony remains of key importance." Colenco Decl. ¶ 19 (Exhibit 1 at 50); *see also* Brazil Decl. ¶ 16 (Exhibit 1 at 6) ("Mr. Dohotaru's

testimony remains of critical importance to Mr. Shor's defense and can still be used in the

pending criminal proceedings against him."). Mr. Shor has appealed to the Supreme Court of

Justice of the Republic of Moldova, which constitutes the domestic court of last instance.

Colenco Decl. ¶ 20 (Exhibit 1 at 50); Brazil Decl. ¶ ¶ 17-18 (Exhibit 1 at 6). As Mr. Colenco

attests, while the Moldovan Supreme Court

> rules primarily on matters of law and is not generally a court of
> fact . . .[,] fresh evidence may still be introduced at this stage if that
> evidence was not known to the defendant, or the defendant did not
> have access to the evidence before the Court of Appeal issued its
> verdict.

Colenco Decl. ¶ 22 (Exhibit 1 at 51). According to Mr. Shor's Moldovan counsel, because he did

not have access to live testimony or documents from Mr. Dohotaru during the proceedings

before the Court of Appeal, Mr. Shor will be entitled to introduce it, once obtained, before the

Moldovan Supreme Court, at which point the Moldovan Supreme Court may either hear it

directly and vacate the conviction based on that, or remand to the Court of Appeal for rehearing.

Colenco Decl. ¶¶ 21-23 (Exhibit 1 at 50-51).[4]

---

[4] Even if the Moldovan Supreme Court does not consider the evidence, Mr. Shor has the
opportunity to pursue an extraordinary appeal—referred to as a "cassation for annulment" and
"review of criminal proceedings"—under Article 458 of the Moldovan Code of Criminal
Procedure, which allows a defendant to request a *de novo* review of criminal proceedings where,
*inter alia*, new exculpatory evidence has been obtained. Colenco Decl. ¶¶ 25-27 (Exhibit 1 at 51-
52) (citing Articles 462 and 463 of the Moldovan Code of Criminal Procedure). If the Moldovan
courts grant Mr. Shor no relief, Mr. Shor intends to appeal to the European Court of Human
Rights ("ECtHR") on the grounds that the Moldovan criminal proceedings violated Mr. Shor's
fundamental rights under the European Convention on Human Rights. Brazil Decl. ¶ 19 (Exhibit
1 at 6-7). Any challenge before the ECtHR would include raising "the improper reliance on Mr.
Dohotaru's evidence in the Court of Appeal in circumstances where Mr. Shor was deprived of
the opportunity to cross-examine him." Brazil Decl. ¶ 20 (Exhibit 1 at 7). And "[i]f the evidence
obtained from Mr. Dohotaru pursuant to the Petition undermines the prosecution case or supports
the defence case—as we anticipate it will—and the Moldovan Supreme Court declines
improperly to admit it or take it into account, we will adduce this further violation before the
ECtHR." Brazil Decl. ¶ 20 (Exhibit 1 at 7).

### E.   Mr. Dohotaru's Noncompliance with a U.S. District Court Subpoena Issued Pursuant to 28 U.S.C. § 1782

Under 28 U.S.C. § 1782, a federal district court may order discovery from persons who reside or are found within its district for use "to give . . . testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).[5]  Pursuant to this statute, undersigned counsel filed a Motion in the Eastern District of Virginia (where Mr. Dohotaru resides) on June 16, 2023, seeking subpoenas to serve on Mr. Dohotaru for documents and deposition testimony. EDVA Case, ECF Nos. 1, 6.  Judge Trenga granted that motion on June 22, 2023, and Mr. Shor, through counsel, served Mr. Dohotaru with both subpoenas on June 26, 2023. EDVA Case, ECF Nos. 11, 12, 14, 15. The subpoena for documents required a response no later than July 14, 2023. ECF No. 12. Nearly two weeks have passed since that deadline—and a month has passed since Mr. Dohotaru was served—and he has not responded through counsel or otherwise.

## II.   STANDARD OF REVIEW

Rule 45 of the Federal Rules of Civil Procedure authorizes a party serving a subpoena to move to compel its compliance once an objection to the subpoena has been made. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also In re Chodiev*, No. 18-MC-13-EGS-RMM, 2020 WL 9439389, at *4 (D.D.C. Aug. 11, 2020). However, "[t]he failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) [now Rule 45(d)(2)(B)] typically constitutes a

---

[5] The Supreme Court also outlined additional discretionary factors for courts to consider in granting Section 1782 applications, which are discussed at length in Mr. Shor's underlying Motion. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45, 264-65 (2004); Memorandum of Law in Support of Mr. Ilan Shor's Petition for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (Exhibit 1 at 62-81).

waiver of such objections." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 124

(D.D.C. 2013) (citing *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998)).

      Rule 45 also authorizes the Court to hold a person in contempt if that person, "having

been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed.

R. Civ. P. 45(g). While the party seeking contempt "must demonstrate the respondent's

noncompliance by 'clear and convincing evidence,'" *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 70

(D.D.C. 2009) (quoting *Broderick v. Donaldson,* 437 F.3d 1226, 1234 (D.C.Cir.2006), the

moving party need not demonstrate that the respondent acted in bad faith in disobeying the

subpoena. *Chodiev*, 2020 WL 9439389, at *3 (citing *Food Lion, Inc. v. United Food and

Commercial Workers Intern. Union, AFL-CIO-CLC*, 103 F.3d 1007, 1016 (D.C. Cir. 1997)

(citations omitted)).

## III.    ARGUMENT

      Mr. Shor served two valid subpoenas on Mr. Dohotaru, which a judge in the Eastern

District of Virginia specifically ordered to issue on consideration of Mr. Shor's Section 1782

Petition. EDVA Case, ECF No. 11. Mr. Dohotaru was served with these subpoenas a month ago,

and he has had ample opportunity to object to these subpoenas. He has not done so, either

directly or through counsel. Instead, Mr. Dohotaru has simply not responded.

      Mr. Dohotaru's non-compliance with these subpoenas is extraordinarily prejudicial to

Mr. Shor's ability to obtain relief in the criminal proceedings in Moldova. Mr. Shor's counsel

has explained at length in the Section 1782 petition—explanations that were credited by the court

in the Eastern District of Virginia in granting the petition—why documents and deposition

testimony from Mr. Dohotaru are critical to his case. While the Deposition Subpoena listed a

compliance deadline of August 11, 2023, which has not yet passed, the Document Subpoena

listed a compliance deadline of July 14. Every day that Mr. Dohotaru fails to produce documents

in compliance with the Document Subpoena deprives Mr. Shor's counsel of the ability to prepare

for his deposition subpoenaed for August 11. Further delay risks prejudicing Mr. Shor's ability to

defend himself in the Moldovan criminal proceedings, and again, Mr. Dohotaru has offered no

objection or indeed made any effort to respond to the subpoena he was served with a month ago.

*Compare Pierce v. Kadida*, Civil Action No. 21-3326-ABJ, ECF No. 28 (D.D.C. Aug. 10, 2022)

(granting motion to compel where respondent had wholly failed to respond to Rule 45

subpoenas), *with Chodiev*, 2020 WL 9439389 (denying motion for sanctions for noncompliance

with subpoena issued pursuant to 28 U.S.C. § 1782, where respondent had objected and

demonstrated impossibility of compliance with the subpoena); *and HT S.R.L. v. Velasco*, 125 F.

Supp. 3d 211, 228 (D.D.C. 2015) (granting petitioner's motion to compel compliance with Rule

45 subpoena issued pursuant to 28 U.S.C. § 1782, where respondent had raised numerous

objections, and denying only to the extent that some of the documents sought by the subpoena

were outside relevant time period), *vacated in part on other grounds*, No. MC 15-664 (RBW),

2015 WL 13759884 (D.D.C. Nov. 13, 2015). Because Mr. Shor, first and foremost, needs the

documents sought in the subpoena, he asks the Court to issue an order to compel compliance.

But Mr. Dohotaru's conduct also warrants contempt and an order to pay attorney's fees

associated with filing and litigating this motion. *See* Fed. Civ. P. R. 45(g). Again, Mr. Dohotaru

was served with these subpoenas a month ago and has made absolutely no response, either

directly or through counsel.[6] The evidence of his noncompliance could not be clearer or more

---

[6] While some courts in this District have declined to hold non-parties in contempt absent a specific order to compel, in those cases the respondent had appeared to object and contest the validity of the subpoena, which Mr. Dohotaru has not done. *See Chodiev*, No. 18-MC-13-EGS-RMM, 2020 WL 9439389 at *5, *6 (Aug. 11, 2020) (sanctions unwarranted where respondent had objected and demonstrated impossibility of compliance); *HT S.R.L. v. Velasco*, No. MC 15-664 (RBW), 2015 WL 13759884, at *6 (setting aside magistrate judge's recommendation of

convincing. *Bilzerian*, 613 F. Supp. 2d at 70. At least one other court in this District has held a non-party in contempt for such a failure and ordered the non-party to pay attorney's fees associated with the costs of filing a motion to compel and for sanctions. *Pierce*, No. CV 21-3326 (ABJ), 2022 WL 18529814, at *1. Such sanctions are warranted here as well.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Shor respectfully requests that the Court (1) compel Mr. Dohotaru to comply with the subpoena for documents on or before August 8, 2023; (2) hold Mr. Dohotaru in contempt for his noncompliance to date; and (3) order Mr. Dohotaru to pay attorney's fees associated with Mr. Shor's filing and litigating this Motion.

DATED:        July 26, 2023                          Respectfully submitted,

                                                             ___/s/_____

                                                             Amelia J. Schmidt (D.C. Bar No. 1012380)
                                                             William Pittard (D.C. Bar No. 482949)
                                                             KaiserDillon PLLC
                                                             1099 14th Street NW
                                                             8th Floor West
                                                             Washington, DC 20005
                                                             Telephone: (202) 640-2850
                                                             Facsimile: (202) 280-1034

                                                             *Counsel for Ilan Shor*

---

sanctions for noncompliance where respondent had objected prior to order to compel). Rule 45(g) clearly permits a court to impose contempt for failure to respond to a subpoena; it does not require that a separate order to comply issue first. Fed. R. Civ. P. 45(g) (contempt may be imposed if the nonparty "fails without adequate excuse *to obey the subpoena or* an order related to it") (cited in *Pierce v. Kadida*, No. CV 21-3326 (ABJ), 2022 WL 18529814, at *1 (D.D.C. Sept. 20, 2022)) (emphasis added). And just as the court in *Pierce* found that contempt was warranted simultaneously with an order to compel, so too here, where Mr. Dohotaru has made *no* response to the subpoena whatsoever, and his noncompliance is so clear as to warrant contempt and attorney's fees in connection with filing this Motion.